UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PROACT SERVICES CORPORATION,

        Plaintiff,

v.                                          Case No.  1:16-CV-242

JACK W. VIS,                         HON. GORDON J. QUIST

        Defendant.
_____/

**OPINION REGARDING MOTION TO REMAND**

      Plaintiff, ProAct Services Corporation, filed a complaint against Defendant, Jack W. Vis, ProAct's former General Manager, in the Mason County Circuit Court on February 4, 2016, alleging state-law claims for common law and statutory conversion, fraudulent and negligent misrepresentation, and silent fraud. (ECF No. 2-1 at PageID.20–24.) ProAct also alleged a claim for declaratory relief that ProAct is entitled to rescind certain agreements due to Vis's alleged fraud and misrepresentations/nondisclosures. (*Id.* at PageID.20–21.) Vis filed an answer, affirmative defenses, and counter-complaint in the state-court case on March 4, 2016. (ECF Nos. 2-4, 2-5.) On March 7, 2014, Vis filed a notice of removal invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). In particular, Vis alleged that the amount-in-controversy requirement was satisfied because ProAct's counsel previously indicated in a letter to defense counsel that ProAct is seeking to recover in excess of $130,000, and that the parties were citizens of different states because ProAct is a Michigan corporation with its principal place of business in Michigan and Vis is a citizen of Idaho. (ECF No. 2 at PageID.3.)

ProAct has filed a motion to remand the case to state court for lack of subject matter jurisdiction. In particular, ProAct argues that Vis cannot show that the parties are diverse because Vis was domiciled in Michigan at the time ProAct filed its complaint in state court. Vis argues that, although he was previously domiciled in Michigan, he changed his domicile to Idaho after accepting a new job there.

For the following reasons, the Court concludes that Vis was domiciled in Michigan at the time ProAct filed its complaint in state court. Accordingly, the Court will grant ProAct's motion to remand because the parties are not diverse.

Vis, as the removing party, "bears the burden of demonstrating federal jurisdiction, and all doubts should be resolved against removal." *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006)); *see also Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989) (noting that any doubts about the removability of a case must be resolved against federal court jurisdiction).

Pursuant to 28 U.S.C. § 1332(a)(1), "district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." The statute requires "complete diversity, that is, that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). A defendant may properly remove a case to federal court based on diversity jurisdiction only if there is complete diversity both at the time the case is commenced and at the time the notice of removal is filed. *See Jerome-Duncan v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).

For purposes of the diversity requirement, citizenship equates with domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). "'A person's domicile is the place where the

person has his or her true, fixed home and principal establishment, and to which he or she has the intention of returning whenever absent.'" *Casey v. Nestle Prepared Foods Co.*, No. 5:13-160-DCR, 2013 WL 5503047, at *5 (E.D. Ky. Oct. 1, 2013) (quoting 15 *Moore's Federal Practice*, § 102.34[2] (Matthew Bender 3d ed.)). To be domiciled within a particular state, an individual must: (1) be physically present in the state; and (2) either intend to make the state his home or lack an intention to make his home elsewhere. *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973). Stated differently, a domicile is "the place where a person dwells and which is the center of his domestic, social and civil life." *Bateman v. DuPont DeNemours & Co.*, 7 F. Supp. 2d 910, 912 (E.D. Mich. 1998) (internal quotation marks, citations and emphasis omitted).

In determining a party's domicile, courts often consider a number of factors, including "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes." *Lim v. Chisato Nojiri & Terumo Americas Holdings, Inc.*, No. 10-cv-14080, 2011 WL 1626551, at *5 (E.D. Mich. Apr. 28, 2011) (internal quotation marks omitted); *see also Casey*, 2013 WL 5503047, at *5 (noting that courts consider payment of taxes, the exercise of political rights, and home ownership as indicators of domicile). A removing party seeking to show a change of domicile must "overcome the 'widely accepted presumption favoring the continuation of an established domicile against an allegedly newly acquired one.'" *S. Indus. Mech. Maint. Co. v. Swafford*, No. 13-2523, 2013 WL 5375422, at *2 (W.D. Tenn. Sept. 24, 2013) (quoting *Ford Motor Co. v. Collins*, No. 11-15011, 2011 WL 5877216, at *1 (E.D. Mich. Nov. 23, 2011)). To overcome this presumption, the removing party must present clear and convincing evidence of a change of domicile. *Id.* In such case, a court must examine the removing party's ties to the new alleged domicile in relation to the former domicile. *Collins*, 2011 WL 5877216, at *2.

In *Collins*, the defendant moved from California to Michigan to accept a job with Ford Motor Company. Approximately six months later, the defendant resigned from Ford and accepted a position with a company in Texas. The defendant claimed that diversity existed because Ford was a Michigan citizen and the defendant was either a California citizen or a Texas citizen. The court first concluded that the defendant was not a citizen of California because his domicile changed when he moved to Michigan to begin his employment with Ford. *Id.* at *3. The court noted that when the defendant moved to Michigan, he listed his California home for sale and moved his entire family to Michigan. The court further noted that while the defendant did not obtain a Michigan driver's license, there was no evidence that he had a California drivers license. Moreover, although the defendant did not change financial accounts, such accounts were national, and the defendant bought a home in Michigan for a job, suggesting that the job was not meant to be temporary. *Id.* The court next considered whether the defendant had changed his domicile to Texas and concluded that he had not done so. First, the court noted that the defendant had neither purchased a house nor signed a lease to rent one in Texas at the time the complaint was filed, and the defendant's affidavit failed to show when the defendant actually planned to move to Texas or when he planned to move his personal belongings and his family there. Regardless, the court observed, none of these things happened before the complaint was filed. *Id.* at *3. The court also considered the defendant's preparations to move before the complaint was filed, including making contact with a realtor in Houston, accepting his position with his new employer, orally agreeing to lease a house in Texas, and purchasing airline tickets for himself and his wife for a trip to Texas to finalize a lease and enroll their oldest son in school. The court concluded that none of this mattered in light of the defendant's failure to take up residence in Texas on or before the date the complaint was filed. *Id.* at *4. Finally, the court found that, in spite of the defendant's assertions that he had traveled to

Texas to finalize his employment documents, the defendant failed to show his presence in the new domicile by clear and convincing evidence as of the date the complaint was filed. *Id.*

In *Swafford*, the court found that the defendant was domiciled in Tennessee, even though he owned a house in Missouri and worked in Arkansas. The plaintiff, a Tennessee limited liability company, had initially employed the defendant in Tennessee, but later reassigned him to work at the facility of a client, Nucor Steel, in Arkansas. *See* 2013 WL 5375422 at *1. Prior to the reassignment, the defendant resided with his wife and son at their home in Tennessee. While working in Arkansas, the defendant stayed at a home owned by the plaintiff's principal owner, but the defendant's wife and son remained at their home in Tennessee. At some point, the defendant stopped working for the plaintiff, but continued working for Nucor Steel in Arkansas, and purchased a house in nearby Cooter, Missouri. The defendant argued that he evinced an intention to remain in Missouri because he: (1) lived at his home in Missouri; (2) worked full-time in nearby Arkansas; (3) banked in Missouri; (4) registered his son for school in Missouri; (5) obtained a Missouri driver's license; (6) registered to vote in Missouri; and (7) had his wife and son move to Missouri after the school year ended. The court found that only the first three factors were pertinent to the issue because the last four occurred after the complaint was filed. The competing evidence showed that the defendant still owned a home and land in Tennessee, his wife and son lived in Tennessee, he paid utilities for the home in Tennessee, had a Tennessee driver's license and vehicles registered in Tennessee, and paid federal income taxes using his Tennessee address. *See id.* at *4. The court stated that although some of these aspects might have indicated only that the defendant was slow in affecting his change of domicile, it found "highly significant" the fact that the defendant's wife and son continued to reside in Tennessee with no intention to leave before the end of the school year. The court reasoned that, "[d]espite some definite ties to Missouri, [the defendant's] primary relationships with the state were employment related, and such relationships alone cannot establish

domicile." *Id.* (citing *Stacey v. ZF Lemforder*, No. 05-CV-72777-DT, 2007 WL 439045, at *3 (E.D. Mich. Feb. 6, 2007)).

In the instant case, Vis has submitted an affidavit providing the details of his move to Idaho. Vis accepted a job with B.A. Wackerli Co. Inc. on January 8, 2016, and traveled to Idaho on January 10, 2016 to begin his employment. (ECF No. 16 at PageID.366.) On January 12, 2016, B.A. Wackerli provided Vis a vehicle registered in Idaho and added Vis to its commercial auto policy. From January 11 to February 4, 2016, Vis resided at the Candlewood Suites in Idaho. On January 19, 2016, Vis made an offer on a house in Ammon, Idaho, and closed on the house on February 1, 2016. (*Id.* at PageID.367.) On February 1 and 2, 2016, Vis set up gas and electric accounts for the Idaho house. After closing on the house, Vis made arrangements with a company called U-Pack to move personal property from his home in Ludington to his new home in Idaho. The moving cubes were dropped off in Ludington on February 5 and were shipped on February 15, 2016. On February 12, 2016, Vis registered to vote in Idaho and obtained his Idaho driver's license. On February 24, 2016, Vis took his automotive service excellence exams, which he needed for his employment with B.A. Wackerli. (*Id.* at PageID.368.) At some point prior to February 23, 2018, Vis changed his billing address for his credit cards to his new Idaho address. On February 22, Vis requested the United States Postal Service to forward his mail to his new address. Finally, on March 29, 2016, Vis purchased and registered a vehicle in Idaho for his wife to drive while living in Michigan. (*Id.* at PageID.369.)

Because ProAct filed its complaint on February 4, 2016, only factors that had arisen on or before that date are pertinent to whether Vis was a citizen of Idaho. *Swafford*, 2013 WL 5375422, at *4. As of that date, Vis had commenced his new employment in Idaho, had been given a company vehicle to drive in Idaho, had purchased and insured a home in Idaho and set up utility accounts for the home, and had made arrangements to have personal property shipped to Idaho.

6

However, as in *Swafford*, Vis's primary contacts with Idaho were related to his employment. In contrast, Vis still owned a home in Michigan where his wife and children continued to reside until the end of the school year. (ECF No. 2-7 at PageID.119 (stating that Vis's "wife and children . . . are still in Michigan at least until the end of the school year").) The *Swafford* court found a similar circumstance "highly significant" to its determination that the defendant was domiciled in Tennessee. *Id.* Moreover, according to George West, ProAct's process server, when he went to Vis's Ludington residence to serve the summons and complaint on February 4, 2016, Vis's wife stated that Vis was not home but would be returning in the evening of February 5, 2016. (ECF No. 7-2 at PageID.208.) Thus, as of February 5, 2016, Vis still had the intent to return to his Michigan home where his family was located.

For the foregoing reasons, the Court concludes that Vis has not carried his burden of showing by clear and convincing evidence that he was a citizen of Idaho as of February 4, 2016, when ProAct filed its complaint. Accordingly, the Court lacks jurisdiction and will grant ProAct's motion to remand.

An Order consistent with this Opinion will enter.


Dated: June 21, 2016                              /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE